WHETSTONE *v.* WALSH.

4-7487 184 S. W. 2d 65

Opinion delivered December 18, 1944.

*Sam Goodkin,* for appellant.

*Y. W. Etheridge,* for appellee.

GRIFFIN SMITH, Chief Justice. Mutual accounts are involved. The litigants, brothers-in-law, have not kept books in the sense ordinarily understood when the term is used. In fact, their transactions have been so loosely recorded that neither can say with certainty what the other owes; hence the difficulty in ascertaining a balance.

Appellant Whetstone contends that after allowing for all differences as to which he is not certain, and crediting Appellee Walsh with border-line claims, the net amount due him is $384.04. Walsh insists that he not only has paid in full, but that Whetstone owes a store balance, as shown by three groups of charge tickets. The Chancellor dismissed Whetstone's complaint, but gave judgment in favor of Walsh for $46.29.

Whetstone, in 1936, owned lands near Stillion Switch. He sold timber to Walsh, the agreement being that $175 should be deposited in a bank to Whetstone's credit. The difference was to be paid Whetstone's wife, from whom he was at that time separated.

There was a later oral agreement whereby Walsh cut chemical- and pulpwood from lands owned by Whetstone. Delivery by Walsh was to Crossett Lumber Company. Cutting occurred in 1937 and 1938. At various times Whetstone left money with Walsh. March 15, 1938, $269.38 was so deposited, part of which, seemingly, was on account, and part in the nature of an advance. Whetstone's testimony was, "I was helping him out; I did not owe him this."

As relations between the two grew less cordial, Whetstone charged that Walsh was not accounting for all of the chemical- and pulpwood cut from his land, for which he was to be paid per cord. Crossett, prior to suit, declined to give delivery information, but upon order of the Chancellor a statement was supplied. *Prima facie* it disclosed amounts substantially in excess of the number of cords Walsh had accounted to Whetstone for.

An auditor was employed, to whom Whetstone delivered his ledger, charge and credit tickets, and such other data as were available. On the face of the audit Walsh was shown to have been indebted to Whetstone $444.97, "plus all wood that Walsh has failed to account for." Sales alleged to have been concealed were found to be $216.08, according to Whetstone.

However, when testimony was taken in an effort upon the one hand to verify the audit, and upon the other hand to impeach it, various errors were disclosed—although the entries, as such, were conceded by Walsh to be correct, subject to the explanations he made, involving claims of payment. Whetstone admitted having in one instance failed to credit Walsh with $136.75. Another omitted credit was $5, making a total of $141.75 "which appellant readily concedes."

While protesting that settlements were periodically made, Walsh was never quite certain that all "running transactions" between them were included. Apparently these adjustments were approximations, each party reserving, with tacit consent of the other, a right to present and explain any matter that may have been overlooked. This course of conduct, we think, prevented the statute of limitation from running against the item of $175 conceded by Walsh to have been the consideration for which Whetstone sold timber to him in 1936. The debt was admittedly unpaid unless absorbed by the so-called periodical "settlements."

We do not think payment can be accounted for in that way; and, in respect of the three tickets for merchandise which were admittedly included in the audit,

they were referable to purchases made in 1940. Evidence supports the conclusion that they were not among the obligations unaccounted for.

The decree will therefore be reversed as to the judgment in favor of Walsh for $46.29. Judgment is rendered here in favor of Whetstone for $175, with interest from suit. Costs in both courts will be equally apportioned between the two.